IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON L. BLUMHAGEN,

                Plaintiff,

                                                            CV 05-6211-AA

      v.

JO ANNE B. BARNHART, Commissioner of                OPINION AND ORDER
Social Security,

                Defendant.                
_____

KATHRYN TASSINARI
BRENT WELLS
HARDER, WELLS, BARON & MANNING
474 Willamette, Suite 200
Eugene Oregon 97401
      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

MICHAEL McGAUPHRAN
TERRY ERIN SHEA
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104
        Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Shannon Blumhagen brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Blumhagen was born March 11, 1963. She attended school through the 8th grade. She worked in the past as a packaging supervisor, grocery store checker, baker, cannery worker, sewing machine operator and waitress. On March 18, 2001, Blumhagen began a medical leave for persistent back pain. She was not able to return to work and was terminated by her employer. Tr. 61, 73, 79, 287.[1] Blumhagen alleges disability beginning March 18, 2001, due to back pain and depression. Tr. 73.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to

---

[1]Citations to "Tr." refer to the page(s) indicated in the Transcript of Social Security Administrative Record filed by the Commissioner. (Docket # 8).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Blumhagen challenges the ALJ's findings at the second and fifth steps of his decision.

At step two, the Commissioner must determine whether the claimant has any impairment that is severe within the meaning of the regulations. The Commissioner will find the claimant not disabled if the ALJ finds that the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant's RFC leaves her able to perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

3 - OPINION AND ORDER

## THE ALJ's FINDINGS

The ALJ found that degenerative disc disease and tendinitis in the left shoulder are severe impairments within the meaning of the regulations because they significantly limit Blumhagen's ability to perform basic work activities. He found that she has mild depression.

The ALJ assessed Blumhagen's RFC as follows:

> the claimant retains the residual functional capacity for light work, in a position that requires only occasional overhead reaching. She would be able to stand or walk for up to two hours and sit for at least six hours when given the opportunity to alternate between sitting and standing.

Tr. 21.

The ALJ determined that Blumhagen could not perform her past work because of her impairments. At step five, the ALJ found that Blumhagen could perform other jobs that exist in the national economy. He identified examples of such work drawn from the testimony of the impartial vocational expert (VE): cashier and small products assembler. The ALJ concluded that Blumhagen was not disabled and not entitled to benefits under Titles II and XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If

4 - OPINION AND ORDER

the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Blumhagen contends the ALJ erred in identifying her severe impairments, assessing her RFC and concluding that she is capable of work in the national economy.

### I.      RFC Assessment

Blumhagen contends the ALJ failed to assess her RFC accurately because he partially discredited her testimony, rejected the disability opinion of Gajanan Nilaver, M.D., and failed to include limitations reflecting her psychological problems.

####     A.      Credibility Determination

Blumhagen testified that she has trouble standing, sitting and lying down. She has pain in the low back and numbness in the right leg from the knee down. Bending over is so painful that she cannot load a dishwasher, vacuum or mop. She cannot finish washing the dishes without taking a break unless she takes her pain medication. It takes her all day to do three hours of housework because she takes frequent breaks to sit or lie down. Tr. 270-71.

She testified that she cannot walk to the end of her father's street or four aisles in a grocery store. She can stand for about 20 minutes to a half an hour. She can sit for about half an hour at a time. She can drive, but has to stop to walk a few minutes during long drives. Her physician told her not to lift over ten pounds. Tr. 272-74.

Blumhagen testified that she helps at home with the housework and caring for her father who is ill. She takes him for dialysis, helps with his personal hygiene and makes sure he eats and takes his medications. In addition, her daily activities include reading and watching television. During the day she takes about 20 breaks lasting anywhere from 20 minutes to an hour and a half. Some of these breaks include lying down for 20 minutes. Tr. 275-77.

The ALJ found Blumhagen's testimony not totally credible. He accepted that she had significant limitation in exertion and overhead reaching and that she needed the opportunity to alternate between sitting and standing. He did not accept her allegations of greater limitation or her claim that she is unable to perform work in the national economy.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

The ALJ found that Blumhagen's subjective opinion of her limitations differed significantly

from the objective medical findings.  The objective medical findings support degenerative disc disease and rotator cuff tendinitis, but not the severe symptoms Blumhagen claims.

In March 2001 diagnostic images showed that Blumhagen had moderate degenerative disc disease in the lumbar spine.  Tr.  134-35.  In April 2001 Frederick Tiley, M.D., obtained an MRI study which showed areas of disc space narrowing and an annular bulge.  His clinical findings were generally negative, except for a limited area of diminished sensation and absent right ankle jerk reflex.  Dr. Tiley felt it was appropriate for Blumhagen to return to work on a light duty basis.  Tr. 147-50.  A repeat MRI in July 2002 did not reveal significant changes.  Tr. 160.

In May 2001, Craig Anderson, M.D., performed a contrast provocative discography which indicated marked degeneration at the L5-S1 disc space.  Blumhagen reported concordant non-radicular axial pain.  Based on these results, Dr. Tiley recommended water exercise and intradiscal electrothermal therapy (IDET) which he felt was likely to resolve her pain.  Blumhagen chose not to pursue this therapy because it was not covered by her insurance.  Tr. 143-44, 150-51.

Blumhagen did not require treatment in the subsequent ten months.  In March 2002, she returned to Dr. Tiley who continued to recommend exercise, IDET and a non-steroidal anti-inflammatory drug for pain.  Tr. 153.

In July 2002, Erik Blake, M.D., performed a consultative evaluation.  He made generally negative clinical findings, including a negative straight leg raise test, normal muscle bulk and tone, normal gait and normal ability to toe walk.  Deep tendon reflexes were normal except at the right ankle.  Blumhagen had diminished sensation in the right L-5 dermatome.  She had decreased range of motion in the left shoulder due to rotator cuff tendinitis which Dr. Blake felt should resolve with physical therapy.

Dr. Blake found that the degeneration in her low back would limit standing and sitting, but she could stand or sit for at least two hours at a time with normal work breaks and could work full-time in the light range if permitted to alternate positions periodically and to avoid frequent bending and other problematic postures.  Tr. 155-59, 161.

In October 2002, Katie Houts, M.D., found some tenderness to palpation, but Blumhagen had a negative straight leg raise test, normal bulk and tone in the musculature of her lower extremities and normal deep tendon reflexes except for the right Achilles.  Tr. 177.

The same month, Raymond Brumbaugh, M.D., evaluated Blumhagen for rehabilitation services.  His clinical findings were generally negative, except that Blumhagen had impingement signs in the left shoulder, limited range of motion in the lumbar spine, diffuse tenderness to palpation and decreased sensation in the right foot.  Dr. Brumbaugh concluded that Blumhagen could lift in the light range and stand with normal breaks for at least two hours out of an eight-hour day, and needed to be able to periodically alternate sitting and standing and to avoid frequent climbing and problematic postures.  Tr. 165-67, 171-73.

Dr. Brumbaugh referred Blumhagen for multi-disciplinary functional rehabilitation services. The rehabilitation specialists opined that Blumhagen would benefit from home exercise, water exercise and pain management programs, but did not continue treating Blumhagen, in large part because of her pending disability claim.  Tr. 219.

In April 2003, Dr. Brumbaugh saw Blumhagen for the same complaints, except that her shoulder pain had switched sides.  He had generally negative clinical findings and gave Blumhagen a referral for physical therapy.  Tr. 216-17.

Blumhagen did not require treatment for the next 12 months.  In April 2004, Blumhagen had

an increase in back pain due to medication noncompliance. Blumhagen had normal bulk and tone in her musculature, good strength, normal reflexes and a negative straight leg raise test. She told Dr. Houts that she would be fine if she were back on her medications. Tr. 220-20A.

In July 2004, Dr. Nilaver obtained generally negative clinical findings while evaluating Blumhagen. Her straight leg raise, Tinel's sign and Phalen's test were negative, neurological examination was normal and motor strength testing was generally normal. Dr. Nilaver found weakness in the right ankle without appreciable difference in muscle tone and no indication of atrophy or wasting. Deep tendon reflexes were normal except at the right ankle. Blumhagen had blunted sensation in the L-5 dermatome. Tr. 233-36.

Dr. Nilaver ordered an MRI study which showed degeneration at the L4-L5 and L5-S1 disc spaces. Blumhagen's spinal cord signal was unremarkable, but Dr. Nilaver detected possible foraminal nerve root irritation at L4 and right nerve root compression at L5. Tr. 232, 237.

In August 2004, Thomas Phipps, M.D., performed a neurological examination and obtained normal results except absent right ankle jerk reflex. Blumhagen demonstrated some weakness but Dr. Phipps noted an element of give-way. He found no evidence of denervation in the L5-S1 dermatome. Tr. 226.

In September 2004, Jonathan Blatt, M.D., evaluated Blumhagen and obtained normal findings on the straight leg raise, muscle symmetry, reflexes, strength and EMG study. Tr. 245-46. Dr. Blatt gave Blumhagen steroid injections which resulted in a pain pattern suggesting iliolumbar and interspinous ligament instability. He planned to seek approval for injections into the affected ligaments at the time of the ALJ's decision. Tr. 241.

The ALJ could reasonably conclude from this treatment record, including the generally

negative objective and clinical findings, the long periods during which Blumhagen did not require treatment and the statements of Drs. Tiley, Blake, Houts and Brumbaugh urging Blumhagen to return to work, that Blumhagen's subjective opinion of her limitations was exaggerated.

The ALJ also pointed out that the treatment record shows a persistent failure by Blumhagen to follow prescribed treatment. Her physicians have consistently recommended home exercise, water exercise, increased activity, and cessation of smoking. The record shows that she has not complied with these recommendations. Her episodes of increased pain have coincided with periods of noncompliance with medications. As a whole, the record reflects that Blumhagen has not followed treatment recommendations with the urgency that would be expected from one who is suffering from disabling pain.

The ALJ also pointed to Blumhagen's work history. Blumhagen did not stop working because she was unable to perform activities within her RFC. She reported that she was terminated because her employer was afraid she would file a workers compensation claim and/or because the employer did not have any work that fell within the light exertion category. Blumhagen reported actively seeking work after the alleged onset of disability, suggesting that she did not consider herself disabled from appropriate light work.

The ALJ also found Blumhagen's reported daily activities inconsistent with complete disability. These activities included walking, caring for her father, performing typical household chores, shopping and fishing. While these activities are not the equivalent of sustained full-time work, they suggest a level of activity that is inconsistent with Blumhagen's asserted limitations.

The ALJ considered proper factors and his credibility determination is supported by substantial evidence in the record as a whole, including the objective and clinical medical evidence,

10 - OPINION AND ORDER

Blumhagen's treatment history, work history and reported daily activities. These factors permitted the ALJ to draw an adverse inference regarding the credibility of Blumhagen's subjective opinion of her limitations. *Smolen*, 80 F.3d at 1284.

The ALJ's interpretation of the evidence is reasonable and provides an adequate basis for discounting Blumhagen's assertion that her symptoms are so severe that she cannot perform work of any kind. His findings are sufficiently specific to permit this court to conclude that he did not discredit her testimony arbitrarily. *Orteza*, 50 F.3d at 750.

## B.    Medical Source Statements

Dr. Nilaver examined Blumhagen three times. He found symptoms of right L5-S1 nerve root compromise including weakness of the right ankle, absent right ankle reflex and blunting of sensation in the L5-S1 dermatome. These findings were consistent with the clinical findings of Drs. Tiley, Blake and Brumbaugh, but they did not suggest that the findings indicated disabling functional limitations.

Dr. Nilaver initially believed Blumhagen's symptoms resulted from scar tissue remaining from an earlier laminectomy. Tr. 236. He abandoned this theory when an MRI study revealed no evidence that scar tissue was a potential cause of the symptoms. The MRI did suggest degenerative compression of the right L5 foraminal nerve root and possible irritation of the nerve roots at L4. Tr. 232, 237. Electrodiagnostic studies obtained on August 5, 2004, failed to show any abnormality that would account for her symptoms. Tr. 229, 231.

Despite these limited findings, on September 8, 2004, Dr. Nilaver wrote a letter in support of Blumhagen's application for Social Security Disability benefits. He summarized the findings outlined above and opined as follows:

> It is therefore my impression that Shannon is incapable of re-entering the work force, even in a sedentary job capacity. I doubt that Ms. Blumhagen will be able to function even if work-related modifications would allow her to periodically vary her position from sitting to standing. I honestly do not think that Ms. Blumhagen will be able to work eight hours a day, five days a week, even with work modifications, and consequently feel that she is entitled to Social Security Disability benefits.

Tr. 231.

The statement that Blumhagen is "incapable of re-entering the work force" and "entitled to Social Security Disability benefits" cannot be given controlling weight. Such statements are not medical opinions about specific functional limitations, but administrative findings reserved to the Commissioner. SSR 96-5p. They cannot be given controlling weight or special significance, even if offered by a treating physician. *Id.*

Furthermore, a treating physician's opinion is controlling only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ declined to give controlling weight to Dr. Nilaver's letter because the clinical and diagnostic tests were generally negative and his opinion was inconsistent with the opinions of Drs. Tiley, Blake, Brumbaugh and Houts regarding Blumhagen's functional limitations. These physicians interpreted essentially the same clinical and objective evidence as Dr. Nilaver and opined that Blumhagen remained capable of working with appropriate restrictions.

An ALJ can reject a treating or examining physician's opinion in favor of the conflicting opinion of another physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d

12 - OPINION AND ORDER

947, 956-57 (9ᵗʰ Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9ᵗʰ Cir. 1989).

The ALJ noted that Dr. Nilaver examined Blumhagen on only three occasions during a brief period in the summer of 2004. Dr. Nilaver determined that Blumhagen was not a good candidate for the treatment he offered and referred her to another physician without actually treating her. The ALJ could reasonably conclude that Dr. Nilaver did not have the kind of treatment relationship with Blumhagen that would give him a favorable position for evaluating her condition, relative to the other physicians.

The ALJ also noted that Dr. Nilaver examined Blumhagen during a period of increased pain from a recent fall that resulted in a temporary exacerbation of symptoms. Blumhagen was not taking pain medication on a regular basis three months before or one month after the period during which Dr. Nilaver examined her. The ALJ could reasonably conclude from this that Dr. Nilaver's clinical findings reflected Blumhagen's temporary condition and did not provide an accurate assessment of her baseline functional capabilities.

The ALJ noted that Dr. Nilaver's disability letter was inconsistent with the statements of all other physicians who offered an opinion on Blumhagen's functional limitations. In May 2001 Dr. Tiley opined that she should exercise and return to work on a light-duty basis. Instead, Blumhagen attempted to perform tasks that exceeded light exertion and failed to exercise or comply with other treatment recommendations.

In July 2002, Dr. Blake opined that she could stand or sit for two hours with normal work breaks and work in the light range for eight hours a day if permitted to change positions periodically. In October 2002 Dr. Brumbaugh opined that Blumhagen could work in the light range of exertion with normal breaks and the ability to change positions periodically. In September 2004, Dr. Houts

13 - OPINION AND ORDER

opined that Blumhagen's condition had been stable while she treated her from 2002 to 2004. She felt Blumhagen could probably work if permitted to change position and limit lifting.

The ALJ also noted that even Dr. Nilaver conceded that many of the diagnostic tests were negative. For example, in his initial examination, he obtained negative results on the straight leg raise, Phalen's sign and Tinel's sign. Blumhagen's neurological examination and motor strength testing were generally normal and she had no appreciable difference in muscle tone, weakness or atrophy associated with her alleged inability to perform even sedentary activity. Her reflexes were generally normal, except she had a missing right ankle jerk. Her sensation was normal except over the right L5-S1 dermatome.

Dr. Nilaver referred Blumhagen for an MRI and electrodiagnostic testing. The electrodiagnostic testing done by Thomas Phipps, M.D., revealed no evidence of denervation of the L5-S1 dermatome and Dr. Phipps detected an element of give-way in Blumhagen's weakness in the right lower extremity. The MRI did not support the existence of impingement from scar tissue as Dr. Nilaver had expected, although it did support worsening of the degenerative changes seen previously.

In summary, the ALJ's written decision demonstrates that he gave due consideration to Dr. Nilaver's letter but found that it was inconsistent with the record as a whole. He concluded that the opinions of other physicians were entitled to greater weight because they were more consistent with the record as a whole. The ALJ's resolution of the conflict between Dr. Nilaver's opinion and those of the other physicians is reasonably supported by the evidence. Accordingly, it must be upheld even if the evidence could be rationally interpreted differently. *Edlund v. Massanari,* 253 F.3d at 1156; *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

14 - OPINION AND ORDER

C.    **Psychological Impairments**

Blumhagen contends the ALJ violated SSR 85-28 by failing to identify her psychological limitations as "severe" impairments at step two of the sequential process.   Under SSR 85-28 and SSR 96-3p, an ALJ can deny a claim at step two only if the evidence shows that a claimant has no severe impairments.   Blumhagen's argument fails because the ALJ did not deny her claims at step two. The ALJ found that Blumhagen has severe impairments and properly continued the sequential evaluation until he reached a conclusion at step five.

The essence of Blumhagen's argument is that the ALJ did not accurately reflect her psychological limitations in his RFC assessment.   Blumhagen's physicians reported two kinds of psychological symptoms:    a history of long-standing depression treated by medication and psychological factors that influence Blumhagen's experience of physical pain.

The record, including subjective reports from Blumhagen, indicates that her depressive symptoms are controlled  with medication therapy.  Tr. 221.  Bill Hennings, Ph.D., a state agency reviewing psychologist, assessed her mental residual functional capacity in October 2002.  Dr. Hennings found evidence of a history of depression successfully treated by medication therapy.  Tr. 181.  He noted evidence that Blumhagen was social and enjoyed activities within her physical abilities.  He concluded that her depression resulted in no more than mild restrictions on daily activities and mild difficulties maintaining social functioning.  Tr. 188.

Blumhagen has not required mental health counseling or hospitalization and no physician has suggested marked limitation in any category of mental function.  Under these circumstances, the ALJ reasonably relied on Dr. Hennings' mental RFC assessment and concluded that Blumhagen's depression does not significantly limit her basic mental work-related activities.  Tr. 16.

15 - OPINION AND ORDER

The record suggests that Blumhagen experiences a heightened level of pain due to psychological factors.  Dr. Brumbaugh referred Blumhagen to Functional Rehabilitation Services, a multi-discipline program involving psychological, physical and occupational therapy.  The psychological evaluation, based on a one-hour interview conducted in December 2002, indicated personality characteristics similar to a profile that often involves behavior problems.  Tr. 219.

The interviewer, whose signature is not legible, noted that Blumhagen had persistent physical symptoms that were not fully explained by her medical condition.  The interviewer recognized the presence of secondary gains from physical complaints but did not think Blumhagen was intentionally faking the symptoms.  The interviewer diagnosed pain disorder and assigned a current global assessment of functioning score (GAF) of 50, which is the high end of the range used by clinicians to describe serious symptoms bordering the range used to describe moderate functional difficulties. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) (DSM-IV) 30-32.  Tr. 175-76.

Blumhagen appears to argue that the ALJ failed to reflect her pain disorder in his RFC assessment.  The functional limitations attributable to a pain disorder are essentially physical. Blumhagen does not allege that her pain disorder impairs her ability to perform basic mental work activities, such as understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervision, interacting appropriately with coworkers, and so forth.  *See* 20 C.F.R. § 404.1521(b), 416.921(b).  There is no evidence that these basic mental functions are impaired.

Blumhagen alleges that her psychological condition causes her to experience a heightened level of pain.  The ALJ's RFC assessment of her physical limitations is equally valid whether the

16 - OPINION AND ORDER

origin of her physical symptoms, including pain, is physical or psychological. The ALJ's reasoning based on the medical source statements, Blumhagen's treatment history, work history, reported activities and the record as a whole, is not diminished by the existence of a pain disorder.

The ALJ relied on the opinions of doctors who were familiar with the psychological factors affecting Blumhagen's symptoms. Dr. Brumbaugh discussed with Blumhagen the interplay between her psychological stressors and her pain.  Tr. 216.  He was aware of this interplay when he opined that Blumhagen could work in the light range of exertion with normal breaks and the option to change positions periodically.  Tr. 172-73.  Similarly, Dr. Houts noted that psychological factors "play a significant role in one's ability to deal with chronic pain" when she opined that Blumhagen could probably work if permitted to change position and limit lifting.  Tr. 239-40.

Based on the foregoing, the ALJ performed a reasonable evaluation of the evidence of mental impairments and his conclusion is supported by substantial evidence.  Even if Blumhagen's interpretation of the record is also reasonable, the ALJ's conclusion must be sustained.  *Andrews*, 53 F.3d at 1039-40.

## II.    <u>Work in the National Economy</u>

Blumhagen contends the ALJ failed to carry the Commissioner's burden of showing that she is capable of performing work in the national economy.

At step five, the Commissioner must show that the claimant can do other work which exists in the national economy.  *Andrews*, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant.  *Id.*  The assumptions in the hypothetical question must be supported by substantial evidence.  *Id.*

Blumhagen contends the ALJ failed to satisfy the Commissioner's burden because he elicited vocational testimony with a hypothetical question that did not reflect Dr. Nilaver's opinion that she cannot sustain competitive work or her testimony that she must take frequent rest periods throughout the day.

As described previously, the ALJ properly discounted Dr. Nilaver's opinion and Blumhagen's testimony.  An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Batson v. Commissioner*, 359 F.3d at 1197-98.  Because the ALJ did not find the limitation in Dr. Nilaver's opinion and Blumhagen's testimony supported by the record, it was not error for him to exclude them from his hypothetical question.  *Magallanes*, 881 F.2d at 756-57.

The ALJ considered all the evidence and framed his vocational hypothetical question based on the limitations supported by the record as a whole; the hypothetical limitations reflected reasonable conclusions that could be drawn from the record as a whole.  The court must uphold the Commissioner's determination if it supported by substantial evidence, even if the limitations asserted by Blumhagen can also be reasonably supported by different interpretation of the evidence. *Andrews,* 53 F.3d at 1039.  Accordingly, Blumhagen's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

///

## CONCLUSION

Based on the foregoing, the Commissioner's final decision that Blumhagen does not suffer from a disability and is not entitled to benefits under the Social Security Act is AFFIRMED, and the

18 - OPINION AND ORDER

case is DISMISSED.

DATED this  31  day of July, 2006.


_____ /s/ Ann Aiken _____
Ann Aiken
United States District Judge